IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 10-00320-12-CR-W-DGK |
| DESHAUN CERUTI, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is defendant's motion to suppress evidence
seized from his vehicle on June 1, 2010, on the grounds that (1)
he was stopped without reasonable suspicion and was arrested
without probable cause, and (2) his vehicle was searched without
a warrant and without an exception to the warrant requirement.  I
find that police had probable cause to arrest defendant, but that
the search of his vehicle was unlawful.  Therefore, defendant's
motion to suppress should be granted.

## I.   *BACKGROUND*

From May 30, 2010, to June 1, 2010, police intercepted calls
they believed indicated that defendant was planning to purchase
drugs from co-defendant Juan Marron.  On June 1, 2010, defendant
was observed leaving Marron's residence carrying a white plastic
bag.  He was followed to his mother's residence, backed his car
into the driveway, and was then encountered by police.  Defendant
was ordered out of the car and placed under arrest.  Police

decided to tow his vehicle and asked defendant if there was anything inside they should know about. Defendant said there were "two pounds of weed" inside. Police inventoried the vehicle and found 20 grams of crack cocaine and 900 grams of marijuana.

On November 18, 2010, an indictment was returned charging defendant with one count of conspiracy to distribute cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. § 846, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(1).

On June 24, 2011, defendant filed the instant motion to suppress (document number 267). On July 11, 2011, the government filed a response (document number 282) arguing that police had valid arrest warrants and that the search of defendant's vehicle was a lawful inventory search.

On August 10, 2011, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorney Bruce Rhoades. The defendant was present, represented by Kelly Connor-Wilson. The following witnesses testified:

1. Special Agent Joseph Geraci, Drug Enforcement Administration

2. Special Agent Kyle Beach, Drug Enforcement Administration

3. Detective Cory Horalek, Kansas City, Missouri, Police Department

4. Officer Robert Evans, Kansas City, Missouri, Police Department

5.    Defendant, Deshaun Ceruti.

In addition, the following exhibits were admitted:

        P. Ex. 3  Photo of 308 Spruce

        P. Ex. 4  Miranda waiver form

        D. Ex. A  Photo of 308 Spruce

        D. Ex. B  Photo of 308 Spruce, taken in early 2011

        D. Ex. C  Kansas City Ordinance 70-135

        D. Ex. D  Document showing defendant satisfied a warrant

        On September 19, 2011, I entered an order setting a follow-

up suppression hearing:

        Although defendant had not mentioned the inventory search
        exception to the warrant requirement in his motion, the
        government relied on that exception in its response and a
        witness was asked by both parties whether the Kansas City,
        Missouri, Police Department has a towing policy and whether
        the impoundment of defendant's vehicle complied with that
        policy.  However, no evidence was introduced as to what the
        Kansas City, Missouri, Police Department's policy is with
        regard to towing and impounding a vehicle parked in the
        driveway of the car's registered owner.  Because the police
        department's tow policy is relevant to whether the search of
        defendant's automobile was lawful, . . .

a follow-up suppression hearing was set.

        On September 28, 2011, the follow-up hearing was held.  The

same attorneys were present, as was defendant.  The following

witnesses testified:

        1.    Officer Robert Evans, Kansas City, Missouri, Police
              Department

        2.    Special Agent Joseph Geraci, Drug Enforcement
              Administration

        3.    Defendant, DeShaun Ceruti

                                3

In addition, the following exhibits were admitted:

P. Ex. 5   KCPD Towing Procedures

P. Ex. 6   Department of Revenue Response printout re:
           vehicle registration dated 9/26/11

D. Ex. E   KCPD Tow-in report dated 6/1/10

D. Ex. F   Page 1 of Report of Investigation by Special Agent
           Kyle Beach dated 5/5/10

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearings, I submit the following findings of fact:

1.   From May 30, through June 1, 2010, Special Agent Joseph Geraci monitored calls intercepted pursuant to a Title III wiretap on the phone of co-defendant Juan Marron (1Tr. at 6). Special Agent Geraci heard a series of calls between Marron and defendant which led Geraci to believe there was going to be a narcotics transaction at Marron's residence, 111 South Lawn (1Tr. at 6-7, 32).

2.   Special Agent Kyle Beach and Detective Cory Horalek went to the residence on June 1 to conduct surveillance (1Tr. at 7, 32). Special Agent Beach was communicating by telephone with Special Agent Geraci and informed Geraci when defendant arrived at the Marron residence (1Tr. at 7-8).

3.   Previous surveillance had been conducted, and police had observed defendant going to Juan Marron's house and they had observed defendant in a 1999 blue Dodge Durango registered either

to defendant's mother or girl friend[1] with either a St. Louis, Missouri, address or registered to 308 Spruce in Kansas City[2] (1Tr. at 8, 19, 32, 34, 38; 2Tr. at 45; D. Ex. F). Police knew that defendant traveled back and forth from St. Louis to Kansas City, specifically to 308 Spruce (1Tr. at 38). At the time of defendant's arrest, police did not know his connection to 308 Spruce other than that he went there when he traveled to Kansas City (1Tr. at 39, 45). In addition, they knew, as of May 5, 2010, that the registered owner of the Durango listed 308 Spruce as her address (D. Ex. F).

4.   On June 1, 2010, Special Agent Beach indicated that he observed the blue Dodge Durango arrive at 111 South Lawn, and he saw defendant get out of the Durango and walk into Marron's residence (1Tr. at 8, 19-20). Defendant was not carrying anything when he went inside (1Tr. at 20). Approximately 14 minutes later, defendant was observed as he exited the residence with a white plastic bag, got into the Durango, and drove away (1Tr. at 8, 20, 23, 35). Detective Horalek followed defendant's

---

[1]Although the witnesses testified repeatedly at the first hearing that the car was registered to defendant's mother, the attorneys stated during the second hearing that the car was registered to defendant's girl friend.

[2]Although there was testimony that the car was registered to a St. Louis address, D. Ex. F is a Report of Investigation prepared by Special Agent Beach indicating that on May 5, 2010 (less than a month before this incident) defendant's blue Dodge Durango was "registered to Eldora Jackson at 308 [S]pruce [S]treet, Kansas City, Missouri".

Durango and also contacted other police officers, requesting that the Durango be stopped because the driver had outstanding city warrants and his license was suspended or revoked (1Tr. at 9, 34, 35, 36-37, 58, 67). Detective Horalek continued to follow defendant to 308 Spruce (1Tr. at 9, 35-36).

5.     Defendant began backing the Durango into the driveway at 308 Spruce by the time the other officers arrived to execute the warrants (1Tr. at 39, 67). A police car pulled into the driveway, in front of defendant's vehicle, nose to nose (1Tr. at 46, 69). Officer Evans got out of the passenger side of the police car and told defendant to put his car in park and raise his hands (1Tr. at 69). At that time, the Durango went into reverse and crashed into the garage door (1Tr. at 46, 69-70).

6.     The driveway slopes at a downward angle to the single-car garage (D. Ex. A). There are retaining walls on each side of the driveway, which is so narrow that it may not even be possible for someone parked in the driveway to open a car door to get out (1Tr. at 48).

7.     Officer Evans walked to the top of the steps going down to the driveway so he could see defendant (1Tr. at 70, 75). Because there was no place for defendant to get out of the car where it was, Officer Evans told defendant to put the car in drive and move it forward a little bit so that he could climb out of the car onto the terraced yard (1Tr. at 70). Defendant did so

6

and then put the vehicle back in park and climbed out the car window (1Tr. at 70, 76). At that time, Officer Evans handcuffed defendant and placed him under arrest for the outstanding warrant and for driving with a suspended license (1Tr. at 70).

8. Officer Evans told defendant that he was being stopped because his vehicle appeared to be one that was used in a robbery the previous day (1Tr. at 77). Officer Evans testified that when arrestees are "especially overwhelmed," which defendant appeared to be (1Tr. at 70, 76, 77), it can help to lie to the person about why he is being stopped -- it can take his mind off of his possible possession of drugs or guns or whatever he may be worried about (1Tr. at 77). "[I]t just kind of gets their mind off of what's going on in their brain versus what's going on in reality." (1Tr. at 77-78). He described it as a ploy to get the person to calm down (1Tr. at 78).

9. Another officer present asked defendant for his name, and he said "DeShaun Ceruti" which is the name of the person the officers had been attempting to arrest (1Tr. at 71). Officer Keil told defendant that he was going to jail and, for officer safety, asked defendant if there was anything in the vehicle they needed to know about (1Tr. at 72). Defendant said he had "two pounds of weed in there" (1Tr. at 72, 79). Officer Keil asked defendant that question because the car was going to be towed since it was on private property (1Tr. at 72). It would have

made no difference had the officers known whose property it was parked on, because it is their practice to tow a vehicle when someone is arrested while in it (1Tr. at 73, 80). Detective Horalek did not tell the arresting officers whether he believed there were drugs in the Durango (1Tr. at 80). Officer Evans is familiar with the Kansas City, Missouri, Police Department tow policy and believes that his actions in towing the Durango were consistent with that tow policy (1Tr. at 81).

10. The car was inventoried and police found 945 grams of marijuana and 21 grams of crack cocaine behind the driver's seat (1Tr. at 73-74). The drugs were inside a white plastic bag (1Tr. at 74).

11. Defendant was originally arrested for outstanding warrants; after the search of his car, he was arrested for possessing narcotics (1Tr. at 64). No one told defendant at the time why he was being arrested (1Tr. at 85). About 15 days after he was released from this arrest, he still had an outstanding warrant for failure to show a license (1Tr. at 86). He satisfied that warrant at that time (1Tr. at 86). To the best of his knowledge, defendant did not have any other warrant outstanding on June 1, 2010 (1Tr. at 87).

12. The Kansas City, Missouri, Police Department general towing requirements list the following situations during which an officer may use discretion to tow a vehicle:

1. Any vehicle upon a street is so disabled as to constitute an obstruction to traffic and the person in charge of the vehicle is, by reason of physical injury or condition, incapacitated to such an extent as to be unable to provide for its custody or removal.

2. Any vehicle or other personal property is parked illegally or placed in such a manner as to constitute a hazard or obstruction to the movement of traffic and when a traffic summons has been affixed to the vehicle or presented to the owner or operator.

3. A vehicle is parked on the streets in the same place continuously for 48 hours or if it is left unattended on an interstate highway or freeway for a period in excess of 10 hours and a summons has been affixed to the vehicle or presented to the owner or operator.

4. The driver of any vehicle is taken into custody by the police department and such vehicle would thereby be left unattended upon a street or highway.

5. Any vehicle is found to be driven or moved on a street or highway which is in such unsafe condition as to endanger any person or property and a summons has be presented to the owner or operator or affixed to the vehicle.

6. Any vehicle is parked on private property or upon an area developed as an off-street parking facility without the consent of the owner, lessee or person in charge of any such property or facility, and upon complaint to the police department by the owner, lessee or person in charge of such property or facility, and a summons has been presented to the owner or operator or affixed to the vehicle.

7. Any vehicle is found, which the police have reasonable grounds to believe has been involved in an accident, and the driver, owner or person in charge thereof has failed to comply with the provisions of city ordinance relating to the reporting of accidents of the police department and the exchange of information at accident scenes.

8. Any vehicle is found on the street, and the driver, owner or person in charge of such vehicle, while driving or in charge of such vehicle or while such

vehicle was parked or stopped, has received a summons to answer to a charge against him for violation of the traffic ordinance, and such driver, owner or person in charge has failed to appear and answer to such charge within the specified time.

9.   Any vehicle or personal property is directly interfering with the maintenance and care or the emergency use of the streets by any proper department of the city.

10.  Any vehicle is parked on the streets or any public place without valid license plates or with license plates reported stolen and when a traffic summons has been affixed to the vehicle or presented to the owner or operator.

11.  A stolen motor vehicle or other personal property is found on a public street or private property.

12.  Removal is necessary in the interest of public safety because of fire, flood, storm or other emergency reason.

13.  Any vehicle is parked on the streets or any public place and bears a city license plate or decal which has been reported stolen or which has been issued to a motor vehicle other than that to which it is affixed, or which has been altered or counterfeited, and when a traffic summons has been affixed to the vehicle or presented to the owner or operator.

14.  The condition of the vehicle, while being operated, is in violation of city ordinance or state law.

(P. Ex. 5).

## III. INITIAL STOP

"[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is *unlicensed* or that an automobile is not registered, or that either the vehicle or an occupant is otherwise *subject to seizure for violation of law*, stopping an automobile and detaining the

10

driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979) (emphasis added).  In this case, police stopped defendant because he was unlicensed since his license had been suspended or revoked, and because he was subject to seizure for violation of law due to the outstanding arrest warrant.  Police were therefore justified in stopping defendant and checking to see if he was indeed the person wanted in the warrant.  Once he identified himself as DeShaun Ceruti, police had probable cause to arrest him on the outstanding warrant.

**IV.  *SEARCH OF DEFENDANT'S CAR***

Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions. <u>United States v. Williams</u>, 616 F.3d 760, 764 (8th Cir. 2010). The government bears the burden of establishing that an exception to the warrant requirement applies.  <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 455 (1971).

The Supreme Court has recognized an exception to the warrant requirement for searching a vehicle lawfully impounded by law enforcement officers.  <u>Cady v. Dombrowski</u>, 413 U.S. 433, 446-48 (1973).  "Impoundment of a vehicle for the safety of the property and the public is a valid 'community caretaking' function of the police," which does not require a warrant.  <u>United States v.</u>

11

Petty, 367 F.3d 1009, 1011-12 (8th Cir. 2004) (quoting Cady v. Dombrowski, 413 U.S. at 441).

The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy -- even a policy that provides officers with discretion as to the proper course of action to take -- and the decision is made "on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987). These parameters are designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." United States v. Petty, 367 F.3d at 1012 (internal quotations omitted).

Law enforcement officers may search a lawfully-impounded vehicle to inventory its contents without obtaining a warrant. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976); United States v. Pappas, 452 F.3d 767, 771 (8th Cir. 2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search"). The reasonableness of an inventory search is determined based upon the totality of the circumstances. United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005). Those circumstances include whether the search was conducted according to standardized

procedures.  <u>South Dakota v. Opperman</u>, 428 U.S. at 376.  Based on the evidence presented, I find that it was not.

Officer Evans testified that his basis for towing the Durango was that defendant was "under arrest and the vehicle was parked on private property." (1Tr. at 72).  He testified that he did not know whose vehicle it was or whose property it was, but it would not have mattered to him if he had known defendant lived there because, "It's just our practice.  When we're asked by other units, if we're making an arrest to go ahead and tow the vehicle.  You never know later down the line whether they might want to seize the vehicle if it's a drug investigation." (1Tr. at 73).

The Kansas City, Missouri, Police Department's towing policy does not provide for towing a vehicle under the circumstances described by Officer Evans.  In fact, no law enforcement officer (despite my holding two suppression hearings) ever testified as to what provision in the policy provided authority to tow defendant's car.  Surprisingly, no witness was ever asked that question.  Therefore, I will review each set of circumstances for which the policy allows towing.

> 1.    Any vehicle upon a street is so disabled as to constitute an obstruction to traffic and the person in charge of the vehicle is, by reason of physical injury or condition, incapacitated to such an extent as to be unable to provide for its custody or removal.

Clearly this provision does not apply because the car was not upon a street, it was not disabled, it was not an obstruction to traffic, and defendant was not incapacitated.

> 2.    Any vehicle or other personal property is parked illegally or placed in such a manner as to constitute a hazard or obstruction to the movement of traffic and when a traffic summons has been affixed to the vehicle or presented to the owner or operator.

This provision does not apply because the car was not parked illegally nor was it placed in such a manner as to obstruct the movement of traffic.  No traffic summons had been affixed to the car or presented to the owner or operator.

> 3.    A vehicle is parked on the streets in the same place continuously for 48 hours or if it is left unattended on an interstate highway or freeway for a period in excess of 10 hours and a summons has been affixed to the vehicle or presented to the owner or operator.

The car was not parked on the street and had not been left unattended for any length of time.  No summons had been affixed or presented.

> 4.    The driver of any vehicle is taken into custody by the police department and such vehicle would thereby be left unattended upon a street or highway.

Although the driver had been taken into custody, the car was not left unattended upon a street or highway.  I am certain that the police intended to utilize this provision; however, defendant pulled into the driveway before the arresting officers arrived.

> 5.    Any vehicle is found to be driven or moved on a street or highway which is in such unsafe condition as to endanger any person or property and a summons has be

presented to the owner or operator or affixed to the vehicle.

The car was not on a street or highway, there is no evidence that it was in an unsafe condition, and no summons had been presented or affixed.

      6.   Any vehicle is parked on private property or upon an area developed as an off-street parking facility without the consent of the owner, lessee or person in charge of any such property or facility, and upon complaint to the police department by the owner, lessee or person in charge of such property or facility, and a summons has been presented to the owner or operator or affixed to the vehicle.

There is no evidence that the car was parked here without the consent of the owner, lessee or person in charge of the property. Police clearly knew that every time defendant came to Kansas City, he stayed at 308 Spruce. There is no evidence that on this occasion defendant did not have permission to stay at this address. Further, no complaint was received by the police from the owner, lessee or person in charge of the property (indeed police chose not to inquire about defendant's permission to park in this driveway), and no summons was presented or affixed.

      7.   Any vehicle is found, which the police have reasonable grounds to believe has been involved in an accident, and the driver, owner or person in charge thereof has failed to comply with the provisions of city ordinance relating to the reporting of accidents of the police department and the exchange of information at accident scenes.

There is no evidence of any accident.

8.  Any vehicle is found on the street, and the driver, owner or person in charge of such vehicle, while driving or in charge of such vehicle or while such vehicle was parked or stopped, has received a summons to answer to a charge against him for violation of the traffic ordinance, and such driver, owner or person in charge has failed to appear and answer to such charge within the specified time.

The car was not found on the street.

9.  Any vehicle or personal property is directly interfering with the maintenance and care or the emergency use of the streets by any proper department of the city.

There is no evidence that the car was interfering with

maintenance, care or emergency use of the streets by the city.

10.  Any vehicle is parked on the streets or any public place without valid license plates or with license plates reported stolen and when a traffic summons has been affixed to the vehicle or presented to the owner or operator.

The car was not parked on the street, there is no evidence

that it lacked valid license plates, and no summons had been

presented or affixed.

11.  A stolen motor vehicle or other personal property is found on a public street or private property.

There is no evidence that the car was stolen.

12.  Removal is necessary in the interest of public safety because of fire, flood, storm or other emergency reason.

There is no evidence that any emergency applied in this

case.

13.  Any vehicle is parked on the streets or any public place and bears a city license plate or decal which has been reported stolen or which has been issued to a motor vehicle other than that to which it is affixed, or which has been altered or counterfeited, and when a traffic summons has

16

been affixed to the vehicle or presented to the owner or operator.

The car was not found on the street or in a public place, there is no evidence that the plate or decal had been stolen or altered, and no summons was presented or affixed.

> 14. The condition of the vehicle, while being operated, is in violation of city ordinance or state law.

There is no evidence that the condition of the vehicle was in violation of any ordinance or law.

During the follow-up hearing, there was significant questioning about when the Durango was registered to 308 Spruce in Kansas City and when it was registered to a St. Louis, Missouri, address. Officer Evans testified that he did not know to whom the car was registered or at what address.

First I note that it is irrelevant whether Officer Evans knew that the Durango was registered to Eldora Jackson at 308 Spruce Street, Kansas City, Missouri -- because Special Agent Kyle Beach knew (D. Ex. F) and was in radio communication with the other law enforcement officers that day. The collective knowledge doctrine[3] imputes the knowledge of all officers

---

[3]I have been unable to find a case applying the collective knowledge doctrine in a defendant's favor rather than the doctrine having been invoked by the government; however, the purpose of the doctrine appears to apply here: The officers were functioning as a team in a "fast-paced, dynamic situation" and it would be "impractical to expect an officer in such a situation to communicate to the other officers every fact that could be pertinent". See United States v. Whitfield, 634 F.3d 741, 746 (3rd Cir. 2010).

involved in an investigation upon the seizing officer when there is some communication between the officers. United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008); United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008).

> We routinely look to the collective knowledge of all officers involved in an investigation to determine whether probable cause exists provided there is some degree of communication among the relevant officers. United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993). We have extended the collective knowledge doctrine to impute knowledge in contexts other than probable cause when officers on a scene are functioning as a team, rather than independent actors. See, e.g., United States v. Terry, 400 F.3d 575, 581 (8th Cir. 2005) (knowledge of protective order); United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001) (knowledge of consent to search); United States v. Wright, 641 F.2d 602, 606 (8th Cir. 1981) (knowledge of prior felony conviction).

United States v. Poe, 462 F.3d 997, 1001 (8th Cir. 2006).

However, regardless of whether this knowledge is imputed to Officer Evans, no legal basis has been established for towing the Durango. Officer Evans testified that (1) he is familiar with the Kansas City, Missouri, Police Department tow policy and believes that his actions in towing the Durango were consistent with that tow policy, and (2) "It's just our practice. When we're asked by other units, if we're making an arrest to go ahead and tow the vehicle. You never know later down the line whether they might want to seize the vehicle if it's a drug investiga-tion." My review above of the general towing requirements in the Kansas City, Missouri, Police Department Procedural Instructions establishes that the decision to tow the Durango was not

consistent with the police department's tow policy, and that the possible desire "down the line" to seize a vehicle is not in the policy.

Finally, I note that in the follow-up hearing, Officer Evans referred to "written and unwritten" police policies (2Tr. at 11). No one provided legal authority for relying on an unwritten policy, and there was no evidence presented (1) as to what the unwritten policies were, or (2) that the police relied on any unwritten policy in this instance.

It seems obvious to me that the plan on this day was to stop defendant in his car and arrest him on the outstanding traffic warrant. Had that been accomplished before defendant got to 308 Spruce, the car would have been left unattended on a public street and it could lawfully have been inventoried and towed. However, because defendant arrived at 308 Spruce before police did, once he was arrested the car was parked in the driveway of a residence at which police knew defendant stayed each time he came to Kansas City. The impounding of a vehicle passes constitution- al muster so long as the decision to impound is guided by a standard policy. In this case, no standard policy provided authority to inventory and tow defendant's car. The only basis was suspicion of evidence of criminal activity, which is impermissible.

## V. DEFENDANT'S STATEMENT AT THE SCENE

After defendant was handcuffed, Officer Keil told defendant that he was going to jail and asked defendant if there was anything in his vehicle the police officers needed to know about. Defendant said he had "two pounds of weed in there."

Miranda v. Arizona, 384 U.S. 436 (1966), requires that a suspect be advised of (among other things) his right to remain silent and to have an attorney with him during questioning. Law enforcement officers are required to advise a suspect of his Miranda rights only if custodial interrogation takes place. Id. Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way. Id. at 429. As defendant had been handcuffed and, per the testimony of the officers, had been arrested on his outstanding warrant, there is no question that he was in custody. There is no evidence that defendant was advised of his Miranda rights prior to the statement that he had "two pounds of weed in there."

The Fifth Amendment prohibits the prosecution from using in its case in chief compelled testimony. Failure to administer Miranda warnings creates a presumption of compulsion. Oregon v. Elstad, 470 U.S. 298, 306-07 (1985). That presumption has not been rebutted by the prosecution. Id. at 307. The evidence establishes that police asked defendant that question "for

20

officer safety" because an inventory search was going to be conducted.  However, because police had no authority to conduct an inventory search, the question by Officer Keil as to whether there was anything in the car the offices needed to be aware of constitutes a "fruit of the poisonous tree" and must be suppressed because it was not preceded by <u>Miranda</u> warnings and a waiver of <u>Miranda</u> rights.

Therefore, defendant's statement that he had "two pounds of weed in there" cannot be used in the prosecution's case in chief, but may be used for impeachment purposes.  <u>Id</u>. citing <u>Harris v. New York</u>, 401 U.S. 222 (1971).

## VI.  *CONCLUSION*

Defendant also argues in his motion that the government should not be allowed to present evidence of his arrest or evidence of intercepted telephone calls because "an attempt is not a complete transaction and there is no evidence that law enforcement officers recovered cocaine from Mr. Ceruti even remotely close to these amounts", there is no evidence that defendant ever spoke to Juan Marron by telephone, and the recordings never refer to Mr. Ceruti by name.  These challenges to the admissibility of evidence are more properly brought in a motion in limine.  Pretrial motions to suppress deal with constitutional violations during the gathering of evidence. Therefore, I will not address those issues here.

21

Based on the above-stated findings of fact and the law as discussed in sections III through V, I find that defendant's arrest was lawful but the government has not met its burden of establishing that an exception to the warrant requirement authorized the search of defendant's car.  Additionally, I find that defendant's statement that he had two pounds of weed in the car was the result of police questioning while defendant was in custody, in violation of <u>Miranda v. Arizona</u>. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order granting defendant's motion to suppress the evidence seized from his car and his statement made at the scene right after his arrest.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
October 5, 2011