IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | Criminal Action No. 10-00320-12-CR-W-DGK |
| DESHAUN L. CERUTI, Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE**

Before the court is defendant's motion to suppress wiretap evidence on the grounds that (1) the affidavit fails to satisfy the "necessity requirement" of 18 U.S.C. § 2518, and (2) "the affidavits" did not establish that minimization was performed. I find that the affidavit in support of the wiretap established necessity and proper minimization techniques were used. Therefore, defendant's motion to suppress wiretap evidence should be denied.

## *I. BACKGROUND*

On November 18, 2010, an indictment was returned charging defendant with conspiracy to distribute cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. § 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h).

On August 31, 2012,[1] defendant filed the instant motion to suppress wiretap evidence (document number 466, 467). On September 21, 2012, the government filed a response in opposition (document number 475) which included Agent Geraci's affidavit for the initial

[1]The motion to suppress was filed well over a year past the deadline for filing pretrial motions and without requesting leave to file it out of time. However, in order to resolve the substantive issue without continuing the trial, given the fact that the trial setting was less than two months away and 19 defendants had planned for some time to be tried on the October 22, 2012, trial docket, the motion was not stricken as untimely and the government agreed to respond to the motion rather than request that it be stricken.

wiretap order, his affidavit for the extension of that wiretap, Judge Fenner's wiretap order, Judge Fenner's order extending the wiretap, minimization instructions, and reports to the court as required by the wiretap orders.

On September 25, 2012, I held an evidentiary hearing on defendant's motion to suppress. The government appeared by Assistant United States Attorney Bruce Rhoades. The defendant was present, represented by Kelly Connor-Wilson. DEA Special Agent Joseph Geraci testified, and the following exhibits were admitted:

| | |
|---|---|
| P. Ex. 1 | Compilation of all the wire contacts between defendant Ceruti and the target telephone |
| P. Ex. 2 | Affidavit in support of the wiretap application |
| P. Ex. 3 | Affidavit in support of an extension of the wiretap order |
| P. Ex. 4 | Order by Judge Gary Fenner authorizing the wiretap |
| P. Ex. 5 | Order by Judge Greg Kays authorizing extension of the wiretap |
| P. Ex. 6 | Instructions to supervising and monitoring agents regarding minimization |
| P. Ex. 7 | 15-day progress report dated May 17, 2010 |
| P. Ex. 8 | 15-day progress report dated May 28, 2010 |
| P. Ex. 9 | 15-day progress report dated June 15, 2010 |
| P. Ex. 10 | 15-day progress report dated June 25, 2010 |

## *II. EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

No search warrants were executed as to defendant Ceruti from April 30 to May 27, 2010 -- prior to the application for extension of the wiretap (Tr. at 38-39). No traffic stops were conducted, but agents did do an identification stop (Tr. at 39). Defendant was identified;

his vehicle and registration were identified (Tr. at 39). No trash searches of defendant's residences[2] were performed during April 30 to May 27, 2010 (Tr. at 40). The government had no confidential informants who knew defendant Ceruti (Tr. at 40). One interview was done of a person defendant was seen with at the airport, but no information was obtained (Tr. at 41).

## *III. NECESSITY*

The federal wiretap statute was first enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 212–223, codified at 18 U.S.C. §§ 2510–2520. United States v. Moore, 41 F.3d 370, 374 (8th Cir.1994). Title III prohibits all wiretapping and electronic surveillance except pursuant to carefully specified procedures. 18 U.S.C. § 2511. "The law has dual purposes, '(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception fo wire and oral communications may be authorized.'" United States v. Lomeli, 676 F.3d 734, 739 (8th Cir. 2012); United States v. Moore, 41 F.3d at 374 (quoting S. Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968–2 U.S.C.C.A.N. 2112, 2153). The statute broadly prohibits wiretaps "[e]xcept as otherwise specifically provided in this chapter." 18 U.S.C. § 2511(1).

---

[2]During the hearing on defendant's previous motion to suppress, the following evidence was admitted and remains unchallenged by defendant:
"3. Previous surveillance had been conducted, and police had observed defendant going to Juan Marron's house and they had observed defendant in a 1999 blue Dodge Durango registered either to defendant's mother or girl friend with either a St. Louis, Missouri, address or registered to 308 Spruce in Kansas City. Police knew that defendant traveled back and forth from St. Louis to Kansas City, specifically to 308 Spruce. At the time of defendant's arrest, police did not know his connection to 308 Spruce other than that he went there when he traveled to Kansas City. In addition, they knew, as of May 5, 2010, that the registered owner of the Durango listed 308 Spruce as her address." (citations omitted). Therefore, it appears clear that police did not know where defendant lived prior to his June 1, 2010, arrest -- they knew only that he went back and forth from Kansas City to St. Louis and had some connection to 308 Spruce in Kansas City (which turned out to be his mother's residence). Since the evidence establishes that police did not know where defendant lived, it is axiomatic that they would not have done trash searches at his residence.

The necessity requirement of § 2518 insures "'that wiretaps are not routinely employed as the initial step in an investigation.'" United States v. Thompson, 210 F.3d 855, 858-859 (8th Cir. 2000) (quoting United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994)). To satisfy the requirement, an application requesting a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); United States v. Jackson, 345 F.3d 638, 644 (8th Cir. 2003). "Whether the statutory requirement is met is to be determined by the issuing judge in a commonsense manner, and the determination is a finding of fact, which can be reversed only if clearly erroneous." United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994) (quoting United States v. Macklin, 902 F.2d 1320, 1327 (8th Cir.1990), cert. denied, 498 U.S. 1031 (1991)).

The court in United States v. Jackson, 345 F.3d at 644-645, explained the necessity requirement as it pertains to drug conspiracies:

> The wiretap was requested for the purpose of discovering the full scope of the conspiracy, the full extent of the criminal activities, and to identify and successfully prosecute each member of the organization. If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied. Agent Gray's affidavit states, with detail, the conventional investigative techniques utilized by law enforcement officers over a period of several years. The methods included surveillance, confidential informants, trash collections, pen registers and toll record information, grand jury subpoenas, search warrants, and witness interviews. The affidavit indicates the difficulties law enforcement officers encountered and explained why the investigative methods which were attempted failed to discover the full scope of the conspiracy. For instance, physical surveillance was largely unsuccessful because Jackson generally appeared to be aware of the presence of the officers; trash collections had been attempted with successful results but were not likely to establish the extent of the conspiracy; and confidential informants were proving to be of limited value because they were providing historical information, were presently incarcerated, or were refusing to cooperate.
>
> Traditional investigative techniques had undoubtedly provided law enforcement officials with sufficient evidence to pursue prosecution of Washington and Jackson for drug-related offenses. Trash collections had provided evidence of drug possession and distribution, and informants had made controlled purchases from Washington and

> provided valuable insight into the organization. Had the purpose of the wiretap been to investigate the illegal activities of only Washington or Jackson, a necessity finding would have been erroneous. However, the facts of this case do not present such a situation. The focus of this application was upon the conspiracy itself, not merely those individuals who were involved and the government adequately established their need for a wiretap. The district court's necessity finding was not clearly erroneous and the motion to suppress was properly denied.

Even if conventional techniques have been somewhat successful, however, a wiretap may still be authorized. United States v. Maxwell, 25 F.3d at 1394; United States v. O'Connell, 841 F.2d 1408, 1415 (8th Cir.), cert. denied, 487 U.S. 1210 (1988). Although Section 2518(1)(c) requires that other investigative techniques be used first, it does not require that officers exhaust those techniques before applying for a wiretap. United States v. Maxwell, 25 F.3d at 1394; United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991). When officers cannot determine from other investigative methods the scope of the suspected conspiracy or are unable to develop enough evidence to successfully prosecute the suspects whom they had identified, the necessity requirement has been met. United States v. Maxwell, 25 F.3d at 1394; United States v. Macklin, 902 F.2d at 1327 (holding that section 2518(1)(c) necessity requirement satisfied when normal investigative procedures failed to reveal scope of conspiracy and all persons involved).

Defendant argues that:

> little to no investigation was done of Juan Marron's relationship with Mr. Ceruti before authorization was sought to tap Marron's phone. There is no evidence that the pen registers, physical surveillance and other claimed methods were used with regard to Mr. Ceruti. Further, there was [insufficient or no] evidence that the stated pre-application methods were ineffective concerning Mr. Ceruti [or that those methods would] put the officers in harm's way.

Defendant provides no legal authority for his argument that pen registers, physical surveillance, and other less-intrusive methods of investigation are required to be used on every member of a suspected drug conspiracy prior to authorization of a Title III wiretap, and indeed I have found none. A wiretap order is only required to identify the telephone to be tapped and

the particular conversations to be seized. United States v. Gaines, 639 f.3d 423, 433 (8th Cir. 2011). The law is clear that if, using other investigative methods, officers have not been able to determine the scope of the conspiracy or develop enough evidence to successfully prosecute the suspects, the necessity requirement has been met. Officers are not required to use all (or even most) less-intrusive investigative techniques on every person who becomes a suspected co-conspirator.

In this case, the affidavit states that:

> The investigation of this drug conspiracy had been going on since 2009. Defendant Ceruti had been intercepted during the original wiretap[3] discussing the purchase of cocaine from Juan Marron. Law enforcement did not know where defendant Ceruti lived but he may have a residence in St. Louis or may reside at 308 Spruce in Kansas City.
>
> In May 2009 a confidential informant ("CI") infiltrated a cocaine distribution operation involving co-defendant Juan Marron. The CI made seven purchased of cocaine from Juan Marron who had provided the target telephone to the CI as contact information. The CI was unable to find out Juan Marron's sources of supply or infiltrate other members of the organization.
>
> Other informants purchased cocaine from another individual operating within the same drug distribution organization as Juan Marron, but those informants were unable to obtain any other information.
>
> Physical surveillance had been conducted but did not provide the identity of Juan Marron's sources of supply or some of his criminal associates. GPS and pen registers had been used but did not result in the identity of Juan Marron's suppliers. In

---

[3]Ceruti was listed as a suspect in the application for the extension on the original wiretap. He was not listed as a suspect in the original application.

addition, members of the conspiracy had noticed surveillance officers before and had stopped their drug trafficking for a time and altered their means of communication as a result.

Although officers believed they had probable cause to obtain a warrant to search Juan Marron's residence, such a warrant would not provide evidence to prosecute Juan Marron's suppliers or customers. Once a residence is searched, the rest of the conspirators change how drug operations are run making it more difficult to investigate the other members of the conspiracy. Other members of the conspiracy indicated they never kept drugs at their residences, and the location of stash houses had not been determined through less-intrusive investigative means.

Trash searched were attempted at several of the conspirators' residences; however, the location of many co-conspirators' residences had not been determined through less-intrusive investigative means.

Grand jury subpoenas would probably not lead to the discovery of critical information and would alert the target subjects of the investigation. Individuals with information would not be likely to testify voluntarily because they would face prosecution themselves.

The informants have long relationships with members of the conspiracy and still had not been able to infiltrate the organization to identify other members, nor were they provided with any information about suppliers or other members of the conspiracy by the members they knew. Undercover officers were not used because Juan Marron conducted drug transactions in the rear of his residence out of the view of surveilling agents which would make it dangerous for the undercover officer; and the confidential informants had been instructed to come to drug transactions alone making it difficult to

introduce an undercover officer. An informant had attempted to use an undercover officer but Juan Marron had told the informant that he must go through Juan to purchase any cocaine.

Toll records had been utilized but no calling pattern had been identified between the target telephone and another telephone that would identify Juan Marron's source of supply. Pen registers and GPS devices were used but provided limited information. Telephones having call activity with the target telephone were cellular phones which can have false or inaccurate subscriber information to prevent identification by law enforcement.

Based on all of the above, I find that the affidavit included a full and complete statement as to whether or not other investigative procedures had been tried and failed or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous. As was the case in United States v. Jackson, supra, the focus of the investigation was the conspiracy, not any individual defendant. The government adequately established the need for the wiretap to discover the scope of the conspiracy, identify its participants, and enable the government to seize drugs and money used in drug transactions. Therefore, the motion to suppress wiretap evidence on the ground that the necessity requirement had not been met should be denied.

## *IV. MINIMIZATION*

Defendant next argues that:

> the government recorded telephone calls, purportedly between Mr. Ceruti and Juan Marron, whereby the officers interpreted terms, such as "it" to be drug related. Essentially, the government deemed these words to be code words for drug activity. However, the alleged illicit activity is an unsupported assumption and no expert was used to interpret these so-called code words. The government failed to meet the requirements of the statute in this regard.

I fail to see how defendant's argument is related to minimization, although the heading of this section in his motion to suppress is: "The communications should be suppressed

because the affidavits did not establish that the government conducted minimization in the administration of the wiretap surveillance." During the hearing, defendant questioned the agent about his interpretation of the intercepted conversations, including pointing out that at no time did defendant use the word "cocaine" when referring to a transaction. This argument does not form a basis for a motion to suppress; rather, it is an argument more appropriately made to the jury during the trial.

Title 18, U.S.C. § 2518(5) requires that electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." Whether minimization has taken place depends upon "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." United States v. Fregoso, 60 F.3d 1314, 1322 (8th Cir. 1995) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)). The touchstone for deciding the minimization issue is that it rests on a statutory command and therefore turns on the intent of Congress in issuing that directive. "[T]he Act's provisions and history which, when read together, indicate that the minimization requirement of 18 U.S.C. § 2518(5) is nothing more than a command to limit surveillance as much as possible in the circumstances, i. e., the minimization question must be considered on a 'case-by-case basis. . . .' Senate Report No. 1097, 1968 U.S. Code Cong. & Adm. News, at 2190." United States v. Cox, 462 F.2d 1293, 1300 (8th Cir. 1972).

> In making this case-by-case inquiry, we also must be mindful that the statute's framers recognized that interceptions which might be excessive in some circumstances might be appropriate in others. As the favorable committee report said of minimization:
>
> > Where it is necessary to obtain coverage to only one meeting, the order should not authorize additional surveillance. Where a course of conduct embracing multiple parties and extending over a period of time is involved, the order may properly authorize proportionately longer surveillance. . . What is important is that the facts in the application on a case-by-case basis justify the period of time of the surveillance.

> Id. (citations omitted). Accordingly, where, as here, the investigation is of an organized criminal conspiracy conversing in a colloquial code, surveillance of most of the telephone calls made during several days does not constitute a failure to minimize simply because in retrospect it can be seen that a substantial portion of them had no evidentiary or investigative value. Accord, United States v. Focarile, 340 F. Supp. 1033 [(D. Md. 1972)]; United States v. LaGorga, 336 F. Supp. [190,] 195-197 [(W.D. Pa. 1971)].

There is no evidence that the government failed to minimize in accordance with the law. The fact that defendant did not use the word "cocaine" in his telephone conversations with his co-conspirators is not a basis for suppressing wiretap evidence. I venture to guess that very few intercepted conversations with drug dealers include the actual name of the drugs and instead include code words for illegal substances.

Based on all of the above, I find that there is no evidence of a failure to minimize. Therefore, defendant's motion to suppress on this basis should be denied.

## *V. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in sections III and IV, I conclude that the affidavit in support of the wiretap established necessity and proper minimization techniques were used. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress wiretap evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has until October 15, 2012,[4] to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
October 9, 2012

[4]The length of time for objections has been shortened due to the late filing of defendant's motion.